Roy BOTTOMS, Plaintiff in Error,

v.

Earl P. BOTTS, Homer P. Hulme, and Thomas O'Dell, doing business as Botts, Hulme and O'Dell and Royal D. Hodge, Defendants in Error.

No. 38319.

Supreme Court of Oklahoma.

Feb. 9, 1960.

Clem H. Stephenson, Seminole, and I. Jake Blevins, Ada, for plaintiff in error.

· Duard C. Willoughby, Ada, and Fred M. Mock, and Lawrence E. Hoecker, Oklahoma City (Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, of counsel), for defendants in error.

BLACKBIRD, Justice.

Plaintiff in error was injured August 22, 1956, when he was caused to fall into a septic tank excavation, with a concrete floor, by a ready-mix concrete truck owned by the partnership of Botts, Hulme & O'Dell, one of the defendants in error, and operated by another defendant in error, Royal D. Hodge, backing into a "batter board" plaintiff in error was holding in front of him while standing in or on a wooden form erected to hold concrete to comprise one of the septic tank's walls. When, thereafter, in December of the same year, plaintiff in error instituted this action against said partnership, and its members, and Hodge, the truck driver and/or operator, to recover damages against said defendants for said injuries, he also named one Bill Kendrick, another of Botts, Hulme & O'Dell's truck drivers, as a defendant in the action.

Upon trial of the case, the jury returned a general verdict for the named defendants, and judgment was entered accordingly. After plaintiff's motion for a new trial was overruled, he perfected the present appeal without making Kendrick a party to it. Our continued reference to the parties will be by their trial court designations, except that, when referring to the defendants in error as "defendants", the term will not include Kendrick.

As a background for dealing with the arguments herein, facts pertinent to the controversy will hereinafter be stated as the necessity arises.

The place where the accident occurred was at the site of a tourist trailer court that plaintiff and his son, Vona Ray Bottoms, both of whom were cement finishers, and a carpenter named Loyd Brewer, were constructing for one E. H. Etier, owner of the premises. A few days after the large excavation for the trailer court's septic tank had been completed, and, after its bottom had been floored with concrete and a long wooden form built inside of, and along, the excavation's east wall, so that mixed concrete could be poured into the

form to constitute, a permanent east wall for the tank, a quantity of such mixed concrete was ordered from the Ada, Oklahoma "yard", or establishment, of the defendant, Botts, Hulme & O'Dell, to be delivered by, and poured from, its concrete mixing trucks (where directed) at the trailer court site. The truck driven by the defendant Hodge was the first of two such trucks to arrive at the trailer court site, a few miles from Ada. After this truck's arrival at a point a short distance east of the excavation, Hodge, its driver, backed it westerly toward a point at the southern end of the wooden form to start ejecting the mixed concrete into the form from the large round mixing bowl on the truck. The form's wooden walls were only about six inches apart, and, after its construction, its top was in varying lengths higher than the ground on the east side of it; and there was a cavity about eight inches wide, and virtually the depth of the tank excavation, between the outer, or east, side of the wooden form's wall, and the ground to its east from which direction the truck approached, or backed, toward the form. Attached to the truck was a metal chute which could be extended out from its rear to catch, and carry to the spot where desired, the mixed concrete which came pouring out of the mixing bowl's mouth when the bowl was properly tilted at an angle downward toward the chute. To make certain that all of the mixed concrete, upon sliding out of the lower end of the truck's chute, would go inside the form, rather than pouring, or slopping, over the top of the form, it was necessary to hold what was called a "batter board" (a piece of plywood wider than the chute) inside the form, opposite the chute's lower end and extending above the form's upper edge, as a sort of "back stop" for the stream of concrete, and a "sideboard" height extension for the western wall of the form.

Before part of the truck's load of mixed concrete was poured into the aforesaid south end of the form, plaintiff and the carpenter, Brewer, did not get up on the form to hold the batter board *until* Hodge

had finished backing the truck up to the point of discharge, had thereupon set the truck's brakes (to keep it from rolling), then had stepped out of the truck's cab and walked back to the truck's rear where he manipulated the chute into place, and was ready to pull the lever tilting the mixing bowl to throw the concrete down into the chute for its descent into the form. After about a half yard of the mixed concrete was poured at that point without mishap, plaintiff told Hodge to move his truck toward the northern end of the form. At the trial, defendants elicited testimony to show that plaintiff told his son, Vona Ray, to direct Hodge in moving the truck over to the end of the form and backing it up to the particular point where plaintiff wanted the second concrete "pouring" done. While Hodge was moving the truck over to the new pouring point, a second load of mixed concrete arrived at the trailer court site in another of Botts, Hulme & O'Dell's trucks driven by the defendant, Bill Kendrick.

Plaintiff pleaded, and attempted to prove, that it was Kendrick, who, after parking, and getting out of, his truck, stood behind, or near the rear of, Hodge's truck, and directed his backing toward the point in the form's north end that plaintiff had designated as the place for the second pouring. Regardless of whether it was Kendrick, or plaintiff's son, who directed the backing of the truck toward the designated place toward the north end of the form, the truck stopped, after backing to a point variously estimated at from six inches to two feet east of the point where the concrete could be properly discharged into the form. Upon being directed to back the truck a short distance more, Hodge backed it a little farther, whereupon the chute, extending behind the truck, hit the batter board plaintiff was holding on top of the form, causing his aforesaid fall to the bottom, or floor, of the septic tank.

Plaintiff's cause of action was based upon negligence described in his petition, and set forth opposite separate enumera-

tions, substantially as follows (except numbers 3 and 6):

1. Hodge's negligence in backing the truck against the batter board that plaintiff was holding;

2. Negligence on the part of Kendrick in failing to direct Hodge to stop the truck before it reached the batter board;

\* \* \* \* \* \*

4. Negligence on the part of Hodge in not stopping the truck as soon as Kendrick directed him to do so;

5. Negligence of Botts, Hulme and O'Dell in employing Hodge to drive said truck, when they knew, or should have known that Hodge was an inexperienced and untrained driver, who was not qualified to drive a ready-mix concrete truck;

\* \* \* \* \* \*

7. Negligence of defendants in adopting a plan, method and means of discharging the mixed concrete that "placed" plaintiff in a dangerous and hazardous position where he was subject to injury, without warning him of the danger;

8. Negligence of defendants in not adopting a plan, method and means for moving the truck and discharging its concrete, that was safe to those who were working near;

9. Negligence on the part of the defendants in using the truck involved, when its brakes did not operate properly and would not stop the truck when applied.

Although plaintiff submitted no instruction to the trial judge with request that it be given, nor does the record show that his counsel in any other manner indicated he thought the court's instructions were incomplete, or not sufficiently detailed, he now, in reliance upon the duty of a trial judge, on his own initiative, to instruct on the decisive issues of cases tried before him, urges error in the omission from the court's instructions of specific ones dealing

with his petition's above described charges of the defendants' negligence; and he represents that there was evidence introduced to support those charges.

■ Plaintiff's contention that Hodge's inexperience and lack of qualification as a ready-mix concrete truck driver was an issue in the case, is based upon evidence showing that the day of the accident was the first day Hodge was employed by the defendant, Botts, Hulme & O'Dell. However, the evidence also showed that Hodge had been employed as a driver for another firm in the same business, immediately previous to his employment by Botts, Hulme & O'Dell. Thus, the fact that Hodge was serving his first day in the employ of Botts, Hulme & O'Dell, created no issue as to Hodge's inexperience; and, the evidence certainly was not sufficient to present any issue as to said defendant partnership's hiring him *with knowledge* that he was inexperienced and unqualified as a ready-mix concrete truck driver.

■ As to defendants' contentions concerning the trial judge's failure to give a specific instruction concerning the above-noted "charge No. 9", we have reached a similar conclusion. Plaintiff testified that the truck involved was known as the "Chickasha" truck, and he, and another witness, Milburn Biddle, testified that they were at the office of the defendant partnership on the Monday following the Wednesday on which the accident occurred, and heard one of said defendant's drivers, named Tate, tell the defendant, O'Dell, that the "Chickasha" truck "hasn't got a sign of a brake on it." We do not think this evidence sufficient, as against the uncontradicted testimony that the truck's brakes were in good operating condition on the day of the accident, to render reversible error the court's failure to give a specific instruction on the subject.

■ There was no evidence that defendants adopted any plan, method and/or means of discharging the mixed concrete from the truck that "placed" plaintiff in a dangerous or hazardous position, as alleged

in plaintiff's "charge No. 7." On the contrary, the evidence shows that if anyone adopted any plan or method which brought that about, it was plaintiff, who placed himself in a position where likely to be injured by just such an accident, as the one that occurred.

Plaintiff's charge No. 8 merely alleges, as an *omission,* negligence in virtually the same area in which charge No. 7 complains of negligent acts of *commission.* The defendants' furnishing mixed concrete for the construction of which plaintiff had charge, could have adopted no plan of discharging the mixed concrete that would have insured plaintiff's safety, when they had no control over him, and it is not claimed that they should have foreseen that, *before* the truck got in a position to discharge the concrete for the second pouring (at the north end of the form) plaintiff would unnecessarily, and contrary to the procedure he had followed in the first pouring (at the south end of the form) climb up on the form, carrying the batter board.

■ We find no merit in plaintiff's contention that the trial court erroneously omitted a specific instruction on his "charge No. 2". In the preliminary part of his instructions, the judge referred the jury to the pleadings, including the petition, with its allegations that the defendant Kendrick was the one who directed Hodge to back the truck closer to the form, that Hodge backed it without warning plaintiff or allowing him time to move, thereby causing the chute to strike the batter board and causing it to strike plaintiff, knocking him from the top of the form into the pit, or excavation. We think these statements in the instructions, when viewed in the light of the explanations of the issues contained in the court's other instructions, were sufficient to invoke the jury's consideration of plaintiff's charges numbered 1, 2 and 4. Charge No. 4 was but a part of, and necessarily included in, the general allegation that Hodge was negligent in his backing of the truck. We have examined the instructions as a whole and are of the opinion that they cover, in

a general way, all of the decisive issues presented in plaintiff's petition, of which there was a joinder effected by competent evidence of probative value. In Sanders v. C. P. Carter Const. Co., 206 Okl. 484, 244 P.2d 822, 824, we held:

"It is the duty of the trial court in instructing the jury on its own motion to instruct upon the decisive issues raised by the pleadings and evidence in the case; but where the trial court does in a general way in its instructions instruct as to all of such issues and either party desires a more specific instruction as to any of such issues it is his duty to request such an instruction. In the absence of such request the court is not required to do so."

See also State Exploration Co. v. Reynolds, Okl., 344 P.2d 275; Champlin Ref. Co. v. A. L. Rayburn, Okl., 323 P.2d 967 (3rd par. Syll.); Lance v. Smith, Okl., 306 P.2d 298 (2nd par. Syll.), and Miller v. Tennis, 140 Okl. 185, 282 P. 345.

█ Under Part "II" of the "Argument" portion of his brief, plaintiff contends that the trial court erred in the following further respects:

(1) By giving its instruction No. 12, which concerned "unavoidable accident" thereby instructing the jury as to a proposition that, as to this case, was purely "abstract", and not established by any evidence;

(2) In unduly emphasizing contributory negligence by giving four instructions which pertained to it, without in any of its instructions, telling the jury that the burden was on defendants to prove such negligence on plaintiff's part, and notwithstanding the absence of any evidence of contributory negligence.

Plaintiff's representation that nowhere in its instructions, did the trial judge tell the jury it was defendants' burden to prove contributory negligence is not entirely accurate. Contributory negligence was one of the affirmative defenses alleged in defendants' answer. By its instruction No. 3, the court informed the jury that the defendant(s) had the burden of establishing such allegations. Nor is it demonstrated that there was no evidence of such negligence. In the testimony, adduced by defendants, tending to show that it was plaintiff's son, agent and employee, Vona Ray—rather than the defendant truck driver, Bill Kendrick—who directed the defendant truck driver, Royal D. Hodge, as he backed the truck toward the north part of the wooden form for the second pouring of concrete, and, in other testimony they adduced to show there was no necessity for plaintiff's climbing up on that part of the form with the batter board, until the truck was in proper position for said pouring, and that it could not reasonably be anticipated that he would do so, and that Hodge, in fact, did not know plaintiff had done this until he got out of his truck to release the concrete mixture from the truck's mixing bowl and discovered that plaintiff had fallen into the septic tank excavation, we think there was ample evidence of plaintiff's contributory negligence requiring submission of that issue to the jury under proper instructions on that subject.

Nor do we find in the court's giving of instructions numbered 9, 10, 13 and 18, unwarranted emphasis on the issue of contributory negligence. Each of these instructions served different purposes. As pointed out by defense counsel, instruction No. 9 defined the term: "contributory negligence"; and the others cited demonstrated its relation to various possible conclusions that the jury might arrive at from their consideration of the evidence. Had the trial judge omitted the latter, the jury would not have been as fully instructed, in the application of the term "contributory negligence" to the evidence of the case, as was desirable in insuring its thorough consideration of the case.

█ It is unnecessary to decide whether or not instruction No. 12 was inapplicable because of the absence of evidence showing that the accident was unavoidable. Assuming said instruction's inapplicability

for that reason, the ultimate question is: Was the trial court's giving of it reversible error under the circumstances? In St. Louis-S. F. Ry. Co. v. Withers, Okl., 270 P.2d 341, we held that an erroneous instruction is not cause for reversal unless it is shown to have probably misguided the jury; and, because of the evidence of plaintiff's contributory negligence (hereinbefore referred to), we cannot say that instruction No. 12, viewed in the light of all of the evidence, all of the instructions and the record as a whole, probably misguided the jury, or that it was such as, in the words of Continental Supply Co. v. Patrick, 66 Okl. 287, 168 P. 996, "would tend to confuse" the jury. We have arrived at the same conclusions here that we expressed in Hayward v. Ginn, Okl., 306 P.2d 320, 324, as follows:

"We are of the opinion, from an examination of the entire record, that the jury must have been so impressed with the fact that the plaintiff was chargeable with contributory negligence that no recovery would have been allowed the plaintiff had the court not incorrectly instructed the jury on the issue of unavoidable accident. We cannot say from our examination and search of the record that the instruction given resulted in a miscarriage of justice. Morris v. White, 177 Okl. 489, 60 P.2d 1031; * * *."

As we have found in none of the arguments advanced for that purpose, any cause for reversing the judgment of the trial court, said judgment is hereby affirmed.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

WILLIAMS, V. C. J., concurs in part and dissents in part.